FREEDMAN + TAITELMAN, LLP
Bryan J. Freedman, Esq. (SBN: 151990)
bfreedman@ftllp.com
Jesse A. Kaplan, Esq. (SBN: 255059)
jkaplan@ftllp.com
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045

Attorneys for Non-Parties Bryan Freedman and Jesse A. Kaplan

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN DOGRA, an individual<br><br>Plaintiff/Counter-Respondent<br><br>vs.<br><br>RUSTY HARDIN; RUSTY HARDIN AND ASSOCIATES, LLP; and DOES 1 through 20, inclusive,<br><br>Defendants/Counterclaimants. | Case No.: 2:22-mc-00193-DSF-PLA<br><br>Assigned to: Judge Dale S. Fischer<br>Referred to: Magistrate Judge Paul L. Abrams<br><br>USDC, E.D. Missouri<br>Case No. Case No.: 4:21-CV-00949<br><br>**REDACTED EXHIBIT B (DKT 10-2) TO THE DECLARATION OF VICTORIA EMERY (DKT 10)** |

Page 1

AMERICAN ARBITRATION ASSOCIATION
ST. LOUIS, MISSOURI
IN THE MATTER OF THE ARBITRATION BETWEEN:

BEN DOGRA,

     CLAIMANT,

vs.              ARBITRATION NO. 01-15-0002-7781

CAA SPORTS, LLC,

     RESPONDENT.

CONFIDENTIAL -- ATTORNEYS' EYES ONLY

ARBITRATION HEARING
DAY 5
MARCH 4, 2016
9:00 A.M. - 6:26 P.M.

Traci M. Mertens, CRC, IL-CSR, MO-CCR
CSR No. 084.003234
CCR No. 857

d9691a2c-f24a-4ed9-89b5-e1ce53fdeae1
Attorneys' Eyes Only
RHA.02.0109024

Page 2

I N D E X

MR. JOHN CAPLIN

Direct Examination by Mr. Brenner ......... Page 6
Cross Examination by Mr. Hardin ........... Page 68
Redirect Examination by Mr. Brenner ....... Page 258
Recross Examination by Mr. Hardin ......... Page 269
Further Redirect Examination by Mr. Brenner Page 278

DR. PATRICK RISHE

Direct Examination by Mr. Monthy .......... Page 280

Page 4

A P P E A R A N C E S
    Mr. Anthony Oncidi, Mr. Guy Brenner, Mr.
Alex Weinstein of Proskauer Rose, LLP, 2049 Century
Park East, Los Angeles, CA 90067 represented
Respondent.

    Mr. Rusty Hardin, Mr. Jeremy Monthy, Ms.
Jenny Brevorka of Rusty Hardin & Associates, 5
Houston Center, 1401 McKinney Street, Suite 2250,
Houston, TX 77010 represented Claimant.
    Arbitrator: Mr. M. David Vaughn, 13732
Lakeside Drive, Clarksville, MD, 21029-1345.

    Also Present: Ben Dogra, Bob Lattinville,
Stella Jares, Niloofar Shepherd, Howard Nuchow, and
Stacey Manela.

Page 3

AMERICAN ARBITRATION ASSOCIATION
ST. LOUIS, MISSOURI
IN THE MATTER OF THE ARBITRATION BETWEEN:

BEN DOGRA,
        CLAIMANT,
vs.         ARBITRATION NO. 01-15-0002-7781
CAA SPORTS, LLC,
        RESPONDENT.


CONFIDENTIAL -- ATTORNEYS' EYES ONLY


IN THE MATTER OF THE ARBITRATION HEARING with witnesses produced, sworn, and examined on the 4th day of March, 2016 at Missouri Athletic Club, 6th Floor, Board Room, St. Louis, MO, before Traci M. Mertens, CRC, IL-CSR, MO-CCR.

Page 5

        IT IS HEREBY STIPULATED AND AGREED by and between counsel for the CLAIMANT and counsel for the RESPONDENT that this Arbitration Hearing may be taken in shorthand by Traci M. Mertens, a Certified Realtime Reporter, Certified Shorthand Reporter and Certified Court Reporter, and afterwards transcribed into typewriting by agreement of counsel.
        ARBITRATOR VAUGHN: On the record. We're convened in the continuation of the arbitration between Dogra -- Mr. Ben Dogra and CAA Sports, LLC. We are convened on March 4, 2016. This hearing is a continuation of a series of hearing dates, the most recent of which was yesterday, March 3. The parties are represented as before. The court reporter is again present. Her transcript will constitute the official record. Unless there are other matters that we need to deal with preliminarily, I invite the announcement of the witness.
        MR. BRENNER: Good morning. CAA Sports calls John Caplin.
        ARBITRATOR VAUGHN: Madam Court Reporter, will you swear the witness. I note we're taking Mr. Caplin out of order.
        (Whereupon, the witness was placed under oath.)

Attorneys' Eyes Only

d9691a2c-f24a-4ed9-89b5-e1ce53fdeae1
RHA.02.0109025



71 (Pages 278 to 281)
PohlmanUSA Court Reporting
(877) 421-0099    www.PohlmanUSA.com

Attorneys' Eyes Only

d9691a2c-f24a-4ed9-89b5-e1ce53fdeae1
RHA.02.0109094

Page 302

1  to the -- what's your calculation for player
2  contracts in that scenario?
3      A.  It's $46.6 million.
4      Q.  All right.  So the actual number, just for
5  the record -- so the record is clear, the actual
6  number is 46,558,325, is that right?
7      A.  Yes.
8      Q.  But we're all looking at this, so we'll
9  just -- we'll just round it to 46.6.  Is that right?
10     A.  Yes.
11     Q.  All right.  And then -- now, did you
12 perform an analysis to determine the revenue stream
13 for coach -- coach contracts?
14     A.  I did look at information that I had at
15 the time of the report with respect to coaches.
16     Q.  And let me stop you right there.  You
17 prepared a report in this case, is that right, sir?
18     A.  Yes.
19     Q.  And so at the time of the report, you had
20 performed an analysis to come up with coach
21 contracts.  Is that what I'm hearing?
22     A.  Yes.
23     Q.  Does the -- what's the amount that's
24 listed next to coach contracts in this slide?
25     A.  $2,756,503.

Page 303

1      Q.  And is that amount the same amount that
2  was -- that you -- that you calculated in your
3  report?
4      A.  It is not.
5      Q.  Where did this amount come from?
6      A.  This amount came from Mr. Meyer's low end
7  estimate.
8      Q.  And who is Mr. Meyer?
9      A.  The expert on the other side.
10     Q.  All right.  So Paul -- CAA has retained
11 Paul K. Meyer; is that your understanding?
12     A.  That is my understanding.
13     Q.  And so -- and so what was the thought
14 behind just taking Mr. Meyer's calculation of coach
15 contracts?
16     A.  Sure.  So in the process of looking at all
17 the data, again, about 87, 88 percent of the total
18 monies involved in this case are player contracts.
19 I had primary source data for that data source.
20 However, for the coaches, upon reflection and
21 realizing I did not have for all the coaches their
22 contracts, upon reflection over -- since the report
23 was submitted, I wanted to use a number that I
24 thought was fair and reasonable.
25     Q.  And so are -- are you -- by using that

Page 304

1  number, do you mean to say that Mr. Meyer got it
2  right or that he performed some analysis, or are you
3  just using it for the purposes of -- of your
4  presentation today?
5      A.  I believe that particular portion of the
6  analysis is fair and reasonable.
7      Q.  Okay.  By the way, before we move off of
8  player contracts, is that -- do you also consider
9  that number to be fair and reasonable?
10     A.  With respect to?
11     Q.  The player contracts, the 46.6 million.
12     A.  Absolutely.
13     Q.  And is there -- are there sources of
14 revenue for players that you could have considered
15 but did not choose to consider for purposes of your
16 analysis?
17     A.  In this particular scenario, the one which
18 would apply that could have been considered and was
19 not were fifth year options for players.
20     Q.  Describe for the Arbitrator what you mean
21 by fifth year options.
22     A.  Sure.  So when the CBA was renegotiated
23 and you have these new rookie scale contracts that
24 started in 2011, they're four-year deals for first
25 round picks, but the club has a fifth year option.

Page 305

1      Q.  And why didn't you consider the fifth year
2  option?
3      A.  I was trying to be conservative.
4      Q.  All right.  Anything else that you decided
5  not to consider with respect to player contracts
6  that would render this number, 46.6 million,
7  conservative?
8      A.  There are several conservative elements
9  that are built into our second.
10     Q.  Okay.
11     A.  Yes.
12     Q.  Now, just so I'm clear, and we'll talk
13 about it later, you did not with respect to the
14 calculations here consider contracts that were
15 either newly signed or renegotiated after the date
16 of termination, is that right, sir?
17     A.  I did not.
18     Q.  And -- and why did you -- why didn't you
19 do that?
20     A.  Again, in the spirit of being
21 conservative.
22     Q.  All right.  Let's go on to marketing.  So
23 in your -- what's the number next to marketing?
24     A.  The number next to marketing is $1.7
25 million.

77 (Pages 302 to 305)

PohlmanUSA Court Reporting
(877) 421-0099          www.PohlmanUSA.com

Attorneys' Eyes Only

d9691a2c-f24a-4ed9-89b5-e1ce53fdeae1
RHA.02.0109100

```
 1         REPORTER CERTIFICATE
 2
 3
 4
         I, Traci M. Mertens, CRC, MO-CCR, IL-CSR,
 5  do hereby certify that there came before me at the
    Missouri Athletic Club, 6th Floor, Board Room, St.
 6  Louis, MO 63102,
 7
 8         ARBITRATION HEARING,
 9       Witnesses were by me first duly sworn;
    that the witnesses were carefully examined, that
10  said arbitration hearing was reported by myself,
    translated and proofread using computer-aided
11  transcription, and the above transcript of the
    arbitration proceedings is a true and accurate
12  transcript of my notes as taken at the time of the
    arbitration hearing.
13
         I further certify that I am neither
14  attorney nor counsel for nor related nor employed by
    any of the parties to the action in which this
15  examination is taken; further, that I am not a
    relative or employee of any attorney or counsel
16  employed by the parties hereto or financially
    interested in this action.
17
         Dated this 10th day of March, 2016.
18
19
20
21       TRACI M. MERTENS, CRC, MO-CCR, IL-CSR
22
23
24
25
```

89 (Page 350)

Attorneys' Eyes Only

d9691a2c-f24a-4ed9-89b5-e1ce53fdeae1
RHA.02.0109112